UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

James F. Laura

    v.                       Civil No. 17-cv-373-JL
                                   Opinion No. 2018 DNH 023

Great Lakes Higher Education
Guaranty Corporation; Goal
Financial, LLC; American Education
Services Corporation; and
Performant Recovery, Inc.


**MEMORANDUM ORDER**


In this action arising from an unpaid debt, plaintiff James

F. Laura challenges as predatory the fact that defendants Great

Lakes Higher Education Guaranty Corporation, Goal Financial,

LLC, American Education Services Corporation ("AES"), and

Performant Recovery, Inc., issued loans to Laura to finance his

legal education knowing he would be unable to repay them --

which he has, twenty years later, not been able to do.[1]  Laura

brought this action in Merrimack County Superior Court.  The

---

[1] As discussed _infra_, it is unclear from Laura's complaint which,
if any, of these defendants participated in the loans'
origination.  At oral argument, the parties represented, to the
best of their knowledge, that Goal Financial originated the
loan, Great Lakes acted as a guarantor, AES serviced the loan,
and Performant attempted to collect the debt beginning in 2017,
well after Laura defaulted.  Laura further indicated that he
believed until recently that Great Lakes was the original
lender.

defendants removed it to this court, see 28 U.S.C. § 1441, which has jurisdiction under 28 U.S.C. § 1332(a) (diversity).

The defendants now move to dismiss this action in its entirety. After reviewing the parties' filings and holding oral argument, the court grants the defendants' motions. Laura's claims arising from the origination of his loans are time-barred by New Hampshire's three-year statute of limitations. Even were they not, Laura has failed to allege facts sufficient to state a claim for relief against these defendants under the New Hampshire Consumer Protection Act, or theories of "predatory lending," breach of the implied covenant of good faith and fair dealing, unjust enrichment, and civil conspiracy.

## I. **Applicable legal standard**

"A pleading that states a claim for relief must contain," among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015) (internal quotations omitted). This standard "demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a

claim."[2] A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013). The court may "grant a motion to dismiss based on an affirmative defense, such as the statute of limitations . . . 'when the pleader's allegations leave no doubt that an asserted claim is time-barred.'" Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998)).

In resolving a motion to dismiss pursuant to Rule 12(b)(6), the court "begin[s] by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal quotations and original alterations omitted). The court then treats the "[n]on-conclusory factual allegations in the complaint . . . as true," id., and draws all reasonable inferences in the plaintiff's favor, Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010). The following recitation of facts takes this approach.

---

[2] The plaintiff misstates the required standard, citing to superseded authority for the proposition that he need only "show whether the allegations in the Plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery." Obj. to Performant's Mot. (doc. no. 18-1) at 1 (citing Clorox Co. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 30 (1st Cir. 2000)).

## II.  **Background**

Laura attended the Franklin Pierce Law Center, now the
University of New Hampshire School of Law, between 1996 and
1999.[3]  He financed his legal education -- including his tuition
and living expenses -- through loans obtained despite the fact
that, at the time, he "was a 'subprime borrower'" who "had no
employment; no prospects of employment; no employment history of
any significance; no money; no bank accounts; no credit, no
credit history and no assets."[4]  By the time he graduated in
1999, Laura had amassed debt of approximately $165,479.[5]  Laura
secured employment as an attorney following his graduation,
earning approximately $30,000 per year.[6]

As a single parent supporting two children, Laura was
granted a forbearance on his payments for financial hardship,
though interest on his loans continued to accrue.[7]  At some point
after 2003, Laura exhausted his forbearance options with respect
to his private loans and began making scheduled payments which,

---

[3] Compl. (doc. no. 1-3) ¶¶ 14, 16.

[4] Id. ¶¶ 15-16.

[5] Id. ¶ 16.  Laura alleges that the defendants loaned him
approximately $78,000 in private loans, and $87,479 in
subsidized and unsubsidized consolidated student loans.  Id.

[6] Id. ¶ 17.

[7] Id. ¶¶ 18, 21.

ultimately, he was unable to pay in full.[8]  He conceded to the debt in an action in Hillsborough County Superior Court, and currently pays $100 per month to satisfy the judgment against him.[9]

Laura likewise exhausted his forbearance options with respect to his subsidized and unsubsidized consolidated student loans.[10]  He unsuccessfully attempted to negotiate a settlement with respect to these loans which, including interest, penalties, and other fees, carry a present balance of $157,135 -- a sum greater than the initial principal.[11]  Laura has likewise been unable to pay this sum.  Following Laura's default, he alleges, "[t]he [d]efendants have made negative reports against [him] to the credit agencies for many years affecting his credit," as a result of which he has been denied "numerous mortgage refinances over the years costing him

---

[8] Id. ¶¶ 19-20.

[9] Id. ¶ 20.

[10] Id. ¶ 22.

[11] Id.

hundreds of thousands of dollars in excess interest, as well as being refused for other types of financing . . . .”[12]

In June 2017, Laura received a notice from either Great Lakes or Performant (or both), indicating that his wages would be garnished to satisfy the debt.[13] Laura then filed this action in Merrimack County Superior Court on July 18, 2017, bringing a variety of common-law and statutory claims against the defendants on the theory that the defendants never should have issued the loans to a "subprime borrower" such as himself, and seeking to enjoin Great Lakes from garnishing his wages "at the rate of 15% of his disposable pay each pay period . . . ."[14]

Defendants Great Lakes and Performant timely removed the action to this court, citing its diversity jurisdiction.[15] See 28 U.S.C. § 1332. All of the defendants who have been served[16]

---

[12] Id. ¶ 23.

[13] See id. ¶ 24 ("On June 21, 2017, the Defendant, Great Lakes, sent the Plaintiff a Notice Prior To Wage Withholding seeking to garnish the Plaintiff's wages . . . ."); Laura Aff't (doc. no. 18-2) ¶ 2 ("Performant Recovery, Inc. sent me written notification as agents for the lender within the last three years and harassed me, telling me they were going to garnish my wages).

[14] Compl. (doc. no. 1-3) ¶ 24.

[15] See Notice of Removal (doc. no. 1).

[16] Laura has named Goal Financial, LLC, as a defendant in this action. Goal Financial had not been served at the time of removal, see Notice of Removal (doc. no. 1) ¶ 2, and the plaintiff confirmed at oral argument that Goal Financial has not, to his knowledge, been served since. Because the time for

have moved either to dismiss the claims against them, see
Fed. R. Civ. P. 12(b)(6), or for judgment on the pleadings, see
Fed. R. Civ. P. 12(c).[17]

## III. **Analysis**

Laura brings the following claims against all defendants:
"predatory lending" (Count 1), breach of the implied covenant of
good faith and fair dealing (Count 2), violation of New
Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-
A (Count 3), unjust enrichment (Count 4), and civil conspiracy

---

service has passed, and absent any showing of good cause from
the plaintiff, the court "must dismiss the action without
prejudice against that defendant . . . ." Fed. R. Civ. P. 4(m).

[17] Pursuant to the latter rule, "[a]fter the pleadings are closed
-- but early enough not to delay trial -- a party may move for
judgment on the pleadings." Fed. R. Civ. P. 12(c). The court
observes that the pleadings in this action are not closed as to
Performant, which brings its motion under this rule, insofar as
Performant has not answered the complaint. The court
accordingly interprets Performant's motion as one under
Rule 12(b)(6) to dismiss the claims against it.

The pleadings are closed, however, as to Great Lakes, the sole
defendant that has answered the complaint (see doc. no. 5). The
court therefore interprets Great Lakes's motion to dismiss,
which "must be made before pleading if a responsive pleading is
allowed," Fed. R. Civ. P. 12(b), as one for judgment on the
pleadings under Rule 12(c).

Neither conversion significantly affects the court's analysis
here. "[T]he two motions are ordinarily accorded much the same
treatment," with only the "modest difference" that "[a]
Rule 12(c) motion . . . implicates the pleadings as a whole."
Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54 (1st Cir.
2006).

(Count 5).  Through these claims, he seeks to discharge his debt

and, on top of that, obtain compensatory damages, punitive

damages, enhanced compensatory damages, and his attorneys' fees.

Laura's allegations in this action, distilled to their

essence, amount to this:  between 1996 and 1999, he applied for

and obtained loans that the loan originators and/or their agents

and successors[18] knew or should have known that he would not be

able to repay.  In the years since, he has in fact been unable

to repay those loans.  Though he has engaged in negotiations

with the lenders and/or their agents, he has not obtained any

---

[18] Laura's complaint poses more questions than it answers as to
his relationship with the defendants.  This is exacerbated by
Laura's failure to delineate which defendants took which alleged
actions, or which, if any, of the present defendants were
involved in originating the loan.  This frustrates the court's
ability to "determine whether, as to each defendant, [the]
plaintiff's pleadings are sufficient to state a claim on which
relief can be granted."  Sanchez v. Pereira-Castillo, 590 F.3d
31, 48 (1st Cir. 2009) (emphasis in original).

For example, Laura describes Performance as "a collection
company," Compl. (doc. no. 1-3) ¶ 6, but he does not allege that
any defendant engaged in unfair or improper collection
practices, and brings no claims predicated on such actions.  At
oral argument, Laura conceded that Performant did not
participate in the loan's origination.  To the contrary, he
admitted that, at least to his knowledge, Performant's
participation in his loan began and ended with the June 21, 2017
letter informing him that his wages may be garnished.
Accordingly, to the extent that Laura purports to bring claims
against Performant arising from the loan's origination, even
drawing all reasonable inferences in Laura's favor, the court
would be hard-pressed to conclude that those claims may proceed
against Performant.

loan modification or other relief beyond an unspecified period of forbearance. One or more of the defendants attempted to collect the debt through a notice that his wages may be garnished. Laura concedes that he is obligated to repay at least the private loans, to which he has confessed judgment.

The majority of Laura's claims thus arise from the origination of the loans at issue. Only his claim for breach of the implied covenant of good faith and fair dealing implicates actions taken by the defendants after that timeframe. As the defendants contend, New Hampshire's three-year statute of limitations bars claims arising from the loans' origination, which occurred between eighteen and twenty-one years ago. Even if it did not, Laura's complaint fails to set forth facts that, even with all inferences drawn in his favor, would permit the court to conclude that these defendants may be liable for the misconduct alleged in any of his claims.[19]

---

[19] The court notes that Laura, himself an attorney, is represented here by counsel. As Judge DiClerico has explained, parties represented by counsel "are not entitled to any special consideration that might be afforded pro se parties. The court cannot be expected either to divine or provide legal theories on behalf of any party represented by counsel." Grand Encampment of Knights Templar of the U.S. v. Conference of Grand Masters of Masons in N. Am., Inc., No. 11-CV-463-JD, 2012 WL 781007, at *3 (D.N.H. Mar. 6, 2012).

**A.    Statute of limitations**

In New Hampshire, "all personal actions," with some exceptions not relevant here, "may be brought only within 3 years of the act or omission complained of . . . ." N.H. Rev. Stat. Ann. § 508:4, I.  Its discovery rule provides that,

> when the injury and its causal relationship to the act
> or omission were not discovered and could not
> reasonably have been discovered at the time of the act
> or omission, the action shall be commenced within 3
> years of the time the plaintiff discovers, or in the
> exercise of reasonable diligence should have
> discovered, the injury and its causal relationship to
> the act or omission complained of.

Id.  New Hampshire similarly imposes a three-year statute of limitations on claims brought under its Consumer Protection Act. Id. § 358-A:3, IV-a (exempting "[t]ransactions entered into more than 3 years prior to the time the plaintiff knew, or reasonably should have known, of the conduct alleged to be in violation of this chapter" from its provisions).  Laura's recitation of facts in his complaint grounds his claims for "predatory lending" (Count 1), unjust enrichment (Count 4), and civil conspiracy (Count 5), as well as his claim under the Consumer Protection Act (Count 2), squarely in the time period during which he obtained the loans in question.

**Predatory lending.**  By the terms of the complaint, "predatory lending" encompasses "any lending practice that imposes unfair or abusive loan terms on a borrower" and "any

practice that convinces a borrower to accept unfair terms
through deceptive, coercive, exploitative or unscrupulous
actions for a loan that the borrower doesn't need, doesn't want
or cannot afford."[20]  The defendants engaged in such a practice,
Laura contends, because "[i]t was undoubtedly obvious to the
Defendants at the time they disbursed funds to the Plaintiff
that he would be unable to repay such amounts . . . ."[21]  Under
the facts set forth in the complaint, these loans originated
between 1996 and 1999.  Accordingly, under these facts, even if
New Hampshire recognized "predatory lending" as a cause of
action (and it is not clear to the court, as discussed infra
Part III.B.1, that it does), Laura's claim is time-barred.

   **Consumer Protection Act.**  The same is true of Laura's claim
under the Consumer Protection Act.  He alleges that, though he
"contracted with the Defendants for certain services to be
provided and performed in a legal and professional manner," to
wit, "provid[ing] financing within [his] means," they instead
"deceptively made [him] believe he was eligible to receive the
loans the Defendants[] provided when it fact he was not."[22]  He

---

[20] Compl. (doc. no. 1-3) ¶ 30.  Laura provides no legal
authority, either in his complaint or his memoranda, in support
of these definitions.

[21] Id. ¶ 31 (emphasis added).

[22] Id. ¶¶ 53-54.

further alleges that the defendants issued to him loans "that they knew [he] was not eligible for and could not repay," knowing and expecting that he would default, allowing them to "charge the Plaintiff interest, fees and penalties to benefit themselves."[23]  Finally, he contends that the defendants "misrepresented several material issues" and "failed to disclose all terms and conditions of the loans," though he does not specify which material issues were misrepresented and what terms and conditions the defendants failed to disclose.[24]  All of these allegations refer to the origination of the loan and the circumstances surrounding, and representations made in connection with, that origination between 1996 and 1999.  This claim is, therefore, also time-barred.

At oral argument, Laura contended that the June 21, 2017 letter concerning wage garnishment constituted an actionable violation of the Consumer Protection Act within the three-year limitations period.  Specifically, he clarified that he intended to bring his claim under the Consumer Protection Act through New Hampshire's Unfair, Deceptive, or Unreasonable Collection Practices Act (UDUCPA), N.H. Rev. Stat. Ann. § 358-C, invoking the provision of that statute under which "[a]ny violation of

---

[23] Id. ¶ 55.

[24] Id. ¶¶ 56–57.

the provisions of this chapter shall also constitute an unfair and deceptive act or practice within the meaning of RSA 358-A:2 and may be enforced by the attorney general pursuant to RSA 358-A." Id. § 358-C:4, VI.  The June 21, 2017 wage garnishment letter, he contended, constituted a UDUCPA violation sufficient to trigger liability under the Consumer Protection Act.  Courts in this district have expressed skepticism about whether this provision allows for a private right actions.  See Gustafson v. Recovery Servs., No. 14CV305-JD, 2015 WL 5009108, at *4 (D.N.H. Aug. 21, 2015) (collecting cases).  Even if it did, Laura has not pleaded any claim under the UDUCPA, alleged that the June 21, 2017 letter violated the UDUCPA, or included any allegations in his complaint that the UDUCPA provided a predicate for his Consumer Protection Act claim.

**Unjust enrichment.**  Laura's claim for unjust enrichment is predicated on his "predatory lending" and Consumer Protection Act claims.  Specifically, he alleges that the Defendants purposefully engaged in "predatory lending" and the behavior allegedly underlying his Consumer Protection Act claim "in a deceptive attempt to pray [sic] upon unsuspecting borrowers like the plaintiff to unjustly enrichment themselves."[25]  Because it relies on the allegations underlying those two time-barred

---

[25] Id. ¶ 65.

claims, New Hampshire's three-year statute of limitations on personal actions similarly bars Laura's claim for unjust enrichment.

**Good faith and fair dealing and civil conspiracy**. It is not so clear to the court that Laura's claim for breach of the implied covenant of good faith and fair dealing (Count 2) is time-barred. To the extent that he invokes contract formation as the basis for his claim, see Birch Broad., Inc. v. Capitol Broad. Corp., 161 N.H. 192, 198 (2010) (implied good-faith obligations include the category of "contract formation"), those claims would be time-barred because the contract formation occurred between 1996 and 1999, more than three years before Laura filed his complaint.

He predicates this claim not only on the loan's origination, however, but also on the defendants' refusal to modify the terms of his loan or negotiate some alternative resolution and on defendants' attempts to garnish his wages.[26] The complaint offers no clarity on the timeframe in which those actions occurred. To the extent that any occurred within the three years before Laura filed his complaint, the statute of limitations would not bar that claim. The same may be said of Laura's civil conspiracy claim (Count 5). The court concludes,

---

[26] See id. ¶¶ 49-50.

however, that both of these claims must be dismissed for other reasons, as discussed <u>infra</u> Part III.B.2, 5.[27]

**The discovery rule.** In objecting to Performant's motion, Laura invokes the discovery rule, arguing that the court must hold an evidentiary hearing before dismissing his claims on statute of limitations grounds.[28] "Once the defendant has established that the statute of limitations would bar the action, the plaintiff has the burden of raising and proving that the discovery rule is applicable to an action otherwise barred by the statute of limitations." Glines v. Bruk, 140 N.H. 180, 181 (1995). Laura has not met that burden here. Laura does not plead any facts -- or assert in his objections any facts, or indicate what facts may come to light through discovery -- that suggest that the court should, or even permit that the court

---

[27] Laura took the position at oral argument that, insofar as one or more of his claims is <u>not</u> time-barred, the court should not dismiss any of his claims that <u>are</u>. He has not offered, and the court is unaware of, authority for the proposition that time-barred claims may proceed solely on the basis that <u>other</u>, unrelated claims fall within the statute of limitations. Nor has he provided any authority for the proposition that, because the statute of limitations does not bar claims against one defendant based on its recent actions, otherwise time-barred claims against <u>different</u> defendants should be allowed to proceed.

[28] Obj. to Performant's Mot. (doc. no. 18-1) at 4.

may, draw the inference that Laura may have been unaware of the alleged misconduct at the time he obtained the loans.[29]

The terms of the complaint compel, instead, the opposite conclusion. His claims are premised on the conclusion that the defendants knew or should have known, at the time they (or their predecessors or agents) lent him money, that he would not be able to repay it. The bases pleaded for this knowledge -- his lack of employment or prospects for employment, bank accounts, credit, credit history, or assets, and the fact that he was a single parent with minor children to support[30] -- were as available to the plaintiff as to the defendants at that time, as was the fact that he did obtain the loans despite these considerations.[31] Thus, the complaint, even read in the light most favorable to the plaintiff, does not support a conclusion that the discovery rule precludes dismissal of these claims, or

---

[29] Indeed, Laura did not even raise the discovery rule in his objections to AES's and Great Lakes's motions. See Obj. to AES's Mot. (doc. no. 14-1) ¶ 11; Obj. to Great Lakes' Mot. (doc. no. 15-2) ¶ 10.

[30] Compl. (doc. no. 1-3) ¶¶ 15, 18.

[31] It may be that lenders possess algorithms or metrics to assess loanworthiness unavailable to borrowers at the time of loan origination. Laura did not contend, however, either in his memoranda or at oral argument, that the defendants decided to issue his loan despite an unfavorable assessment under any such metrics; he bases his allegations solely on information clearly known to him.

that Laura is entitled to an evidentiary hearing before their dismissal.

**B.    Failure to state a claim**

Even setting aside the statute of limitations, Laura's complaint must be dismissed because he fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" with respect to any claim.  Martinez, 792 F.3d at 179.  Notably, Laura does not object to any of the defendants' motions to dismiss or for judgment on the pleadings on the merits.  He objects solely on the grounds that he has not yet conducted discovery in this case, and thus the motions are premature.[32] But the court's task in resolving a motion to dismiss under Rule 12(b)(6) is to decide "whether [the plaintiff] is entitled to undertake discovery in furtherance of the pleaded claim." Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004). That discovery has not yet commenced does not alleviate the plaintiff of his burden of setting forth facts in his complaint from which a court may reasonably conclude that he may be entitled to undertake that discovery.  Here, Laura has not carried that burden as to any claim.

---

[32] See Obj. to AES's Mot. (doc. no. 14-1) ¶ 11; Obj. to Great Lakes' Mot. (doc. no. 15-2) ¶ 10; Obj. to Performant's Mot. (doc. no. 18-1) at 4.

### 1. "Predatory lending" (Count 1)

As discussed supra, Laura captions his first claim as
"Predatory Lending." He alleges, in effect, that the
defendants[33] tortuously lent him money despite knowing or having
reason to know he could not repay it, thus opening him up to
"exorbitant interest, penalties and fees."[34] He has not,
however, offered an authority to establish "predatory lending"
as a recognized common-law cause of action under New Hampshire
law. Nor can he ground such a claim on federal regulations
concerning registration of national banks that deal in municipal
securities, see 12 C.F.R. § 10, or on Regulation Z promulgated
under the Truth in Lending Act, see 12 C.F.R. §§ 1026.37 and
1026.38, and the Home Mortgage Disclosure Act, 12 U.S.C. § 2801
et seq., which concern mortgage lenders and mortgage loans, the
existence of which Laura has not alleged.[35] On the facts
alleged, therefore, Laura has not established the availability
of, or stated a claim for, "predatory lending."

---

[33] Though just which defendants Laura charges with this action,
as discussed supra, it is not clear.

[34] Compl. (doc. no. 1-3) ¶ 41.

[35] Compl. (doc. no. 1-3) ¶¶ 33, 40 (citing these regulations).

## 2. Breach of the covenant of good faith and fair dealing (Count 2)

New Hampshire law recognizes the applicability of the implied covenant of good faith and fair dealing in three circumstances:  "(1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance." Birch Broad, 161 N.H. at 198. Invoking the first and third of these categories, Laura contends that the defendants breached this covenant by rejecting his efforts to "work out an affordable repayment plan," "refus[ing] to accept anything except the amounts they demand," and otherwise "contracting with [him] in an unfair, unethical, unprofessional and predatory manner . . . ."[36]

As to the limitation of discretion in performance, however, "[c]ourts have generally concluded . . . that the covenant of good faith and fair dealing in a loan agreement cannot be used to require the lender to modify or restructure the loan." Moore v. Mortgage Electronic Registration Systems, 848 F. Supp. 2d 107, 130 (D.N.H. 2012). That is precisely what Laura asks here, alleging a breach of the covenant in the defendants' refusal to accept a lump-sum payment or to negotiate more favorable terms for repayment after Laura received the benefit of his bargain.

---

[36] Compl. (doc. no. 1-3) ¶ 49.

And as to the contract's formation, Laura has offered, and the court has found, no authority suggesting that the facts alleged by Laura underlying his theory of predatory lending bring his claims within this category.  This claim must therefore be dismissed.

### 3.    Consumer Protection Act (Count 3)

New Hampshire's Consumer Protection Act renders it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state."  N.H. Rev. Stat. Ann. § 358-A:2.  The New Hampshire Supreme Court recognizes, however, that, "although this provision is broadly worded, not all conduct in the course of trade or commerce falls within its scope.  'An ordinary breach of contract claim, for example, is not a violation of the CPA.'"  Turner v. Shared Towers VA, LLC, 167 N.H. 196, 209 (2014) (quoting Axenics, Inc. v. Turner Const. Co., 164 N.H. 659, 675 (2013)).

Laura alleges that the defendants have violated this statute in that they:  (1) "made the Plaintiff believe he was eligible to receive the loans [they] provided when in fact he was not"; (2) "provided loans to the Plaintiff that they knew [he] was not eligible for and could not repay"; (3) "misrepresented several material issues"; and (4) "failed to

disclose all terms and conditions of the loans."[37]  Laura has not
indicated which of the prohibited offenses enumerated in the
Consumer Protection Act he accuses the defendants of committing,
see N.H. Rev. Stat. Ann. 358-A:2, I-XVII, and it does not appear
to the court that his allegations fall into any of those
categories.

When faced with determining whether "commercial actions not
specifically delineated are covered by the CPA," the court
employs a "rascality test," under which "the objectionable
conduct must attain a level of rascality that would raise an
eyebrow of someone inured to the rough and tumble of the world
of commerce."  Turner, 167 N.H. at 209 (quoting Axenics, 164
N.H. at 675-76).  "[A] defendant who induces the plaintiff to
enter a contract based on a knowing misrepresentation of the
promisor's intent to perform under the contract" and
"misrepresentations made by a defendant in an ongoing effort to
avoid performing under an agreement, when the defendant did not
intend to perform," for example, may violate the Consumer
Protection Act.  Moulton v. Bane, 2016 DNH 58, 33-34
(DiClerico, J.) (internal quotations and citations omitted).

The present circumstances differ from these scenarios in
that Laura does not allege that the defendants misled him as to

---

[37] Id. ¶¶ 54-57.

their intent to perform under the loan agreement. Rather, he alleges that they should have known he would be unable to perform. The court cannot conclude, under the facts alleged here, that issuing a loan requested by the plaintiff to obtain an education that, presumably as well as reasonably, he as well as the lenders believed would increase his earning potential, rises to the level of rascality required for a claim to lie under New Hampshire's Consumer Protection Act. Furthermore, Laura fails to allege just which "material issues" the defendants misrepresented or what "terms and conditions of the loans" they failed to disclose.[38] Nor does he allege that he would not have agreed to the loan or accepted the loaned funds had he been aware of those "material issues" or "terms and conditions." Accordingly, he has failed to state a claim under New Hampshire's Consumer Protection Act.

### 4.  Unjust enrichment (Count 4)

"Unjust enrichment is an equitable remedy that is available when an individual receives a benefit which would be unconscionable for him to retain." Axenics, 164 N.H. at 669 (citations and quotations omitted). Such a claim is limited, however, in that "the court cannot allow recovery under a theory of unjust enrichment when there is a valid, express contract

---

[38] See Compl. (doc. no. 1-3) ¶¶ 56-57.

covering the subject matter at hand." Id. Here, Laura alleges
the existence of a contract between himself and his lender.[39]
Under the particular circumstances and facts pleaded (and not
pleaded) here, a claim for unjust enrichment does not lie in
light of such a contract's existence. Laura's claim for unjust
enrichment must therefore be dismissed.

### 5. Civil Conspiracy (Count 5)

To state a claim for civil conspiracy, the plaintiff must
allege:

> (1) two or more persons (including corporations);
> (2) an object to be accomplished (i.e., an unlawful
> object to be achieved by lawful or unlawful means or a
> lawful object to be achieved by unlawful means);
> (3) an agreement on the object or course of action;
> (4) one or more unlawful overt acts; and
> (5) damages as the proximate result thereof.

Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987) (internal
citations omitted). Laura alleges no facts in support of these
elements; he relies, instead, only on unsupported conclusions
that, for example, "[t]he Defendants conspired, connived and
arrived at and acted in an agreement to accomplish their
objections," which were "to commit all of the violations of law
stated [in the complaint] against the Plaintiff . . . ."[40] He

---

[39] Compl. (doc. no. 1-3) ¶¶ 44, 53; see also id. ¶¶ 15-16
(alleging that defendants loaned funds to plaintiff).

[40] Compl. (doc. no. 1-3) ¶¶ 68-69.

does not, however, allege the existence of any agreement between, or even communication among, the defendants, and for the several reasons discussed in the preceding actions, he has not alleged any violations of law. Laura "merely offers legal conclusions couched as fact or threadbare recitals of the elements of [this] cause of action," which the court must disregard. Ocasio-Hernández, 640 F.3d at 12 (internal quotations and original alterations omitted). Furthermore, "[b]ecause the underlying tort upon which the civil conspiracy claim is premised is dismissed, the conspiracy claim also fails." Judge v. Moving Into Maths, No. 93-cv-213, 1994 WL 262883, at *6 (D.N.H. Jan. 11, 1994) (Diclerico, J.). The court therefore also dismisses Laura's civil conspiracy claim.

### C.    Laura's affidavits

Laura has submitted several affidavits in support of his objections.[41] In resolving motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), the court considers only the allegations set forth in the pleadings and "facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." Rederford v. U.S. Airways,

---

[41] See doc. nos. 14-2, 15-1, and 18-2.

Inc., 589 F.3d 30, 35 (1st Cir. 2009) (internal quotations and citations omitted).

The court may consider facts external to these sources only by converting the present motions to motions for summary judgment.  See Fed. R. Civ. P. 12(d).  It is disinclined to do so here, where the complaint was recently filed, the parties (by their own representation) have not engaged in significant discovery, and it is the plaintiff -- the nonmoving party -- who seeks to introduce facts that he could have, but decided not to, include in his complaint.  See United States v. Kattar, No. 95-cv-221, 1996 WL 784587, at *3 (D.N.H. Dec. 31, 1996) (DiClerico, J.) ("The court declines to convert the instant motion [to dismiss] into a motion for summary judgment based on materials that have been submitted by the nonmoving party and to which the defendants have not responded."); cf. Rubert-Torres v. Hosp. San Pablo, Inc., 205 F.3d 472, 475 (1st Cir. 2000) (affirming conversion where, nearly a year after the complaint was filed and following substantial discovery, the plaintiff incorporated extrinsic material into opposition to motion for judgment on the pleadings).

Even were the court inclined to consider this external information, the facts set forth in those affidavits would not alter the court's analyses supra Parts III.A and B.  He relies on them to establish that (1) these defendants contacted him and

attempted to collect on the debts at issue; (2) he attempted to negotiate a resolution; and (3) he was unsuccessful.  These allegations largely address the defendants' arguments that the plaintiff has failed to plead with specificity just which defendant has engaged in which acts of alleged misconduct.[42] Though this deficiency does infect the complaint, the court concludes that dismissal is warranted for other reasons, as discussed <u>supra</u> Parts III.A and B.

To the extent that Laura relies on his affidavits to "further clarif[y] some of the allegations" in his complaint,[43] these allegations offer only minimal additional detail with respect to Laura's attempts to negotiate repayment plans,[44] AES's acceleration of payment in light of Laura's default,[45] and Performant Recovery's attempt to attach his wages.[46]  Laura made

---

[42] <u>See, e.g.</u>, Great Lakes's Mem. (doc. no. 13-1) at 3, 5; AES's Mem. (doc. no. 11-1) at 7; Performant's Mem. (doc. no. 17-1) at 3.

[43] Obj. to Performant Mot. (doc. no. 18-1) at 4.  He does not elaborate on the intended purpose of his affidavits in support of his objections to AES's and Great Lakes's motions, referring the court to them without argumentation or explanation.  <u>See</u> Obj. to AES's Mot. (doc. no. 14-1) ¶ 12 ("See attached Affidavit of James F. Laura."); Obj. to Great Lakes's Mot. (doc. no. 15-2) ¶ 11 (same).

[44] Laura Aff't (doc. no. 14-2) ¶¶ 4-7; Laura Aff't (doc. no. 15-1) ¶¶ 5-8.

[45] Laura Aff't (doc. no. 14-2) ¶¶ 2-7.

[46] Laura Aff't (doc. no. 18-2) ¶¶ 2-3, 5-6.

each of these allegations more generally in his complaint,[47] however, and the court addressed them in its analysis.  He has offered no explanation or argument as to how these facts would or should alter that analysis.  Nor would they.

### D.  Request to amend the complaint

In his objection to Performant's motion, Laura argues that he ought to be afforded an opportunity to amend his complaint to offer "more information on [Performant's] specific role."[48]  This request runs afoul of this court's local rules, which provide that "[o]bjections to pending motions and affirmative motions for relief shall not be combined in one filing."  LR 7.1(a)(1). Even if it did not, permitting Laura to amend his complaint with respect to the claims barred by the statute of limitations would be futile.  See Rife v. One W. Bank, F.S.B., 873 F.3d 17, 21 (1st Cir. 2017) (upholding denial of motion to amend complaint where predatory lending claims were barred by statute of limitations).  Such an amendment would also be futile as to Laura's claim for breach of the covenant of good faith and fair dealing.  Increased clarity on Performant's role in rejecting Laura's efforts to modify the loan would not clear the hurdle that such a claim "cannot be used to require the lender to

---

[47] Compl. (doc. no. 1-3) ¶¶ 20, 22.

[48] Obj. to Performant Mot. (doc. no. 18-1) at 3-4.

modify or restructure the loan." [Moore, 848 F. Supp. 2d at 130](). Finally, additional allegations as to the actions of a single defendant would not save Laura's civil conspiracy claim, which depends on the actions of more than one party.

## IV.  Conclusion

Laura's claims for "predatory lending," unjust enrichment, and violations of New Hampshire's Consumer Protection Act arising out of events occurring between 1996 and 1999 are barred by New Hampshire's three-year statute of limitations.  He further fails to recite facts sufficient to state those claims, as well as his claims for breach of the covenant of good faith and fair dealing and civil conspiracy, against the defendants. The defendants' motions to dismiss[49] and for judgment on the pleadings[50] are, accordingly, GRANTED.  Laura's request to amend the complaint[51] is DENIED.  The court also dismisses, without prejudice, Laura's complaint against Goal Financial, LLC.  See [Fed. R. Civ. P. 4(m)]().  The clerk shall enter judgment accordingly and close the case.

---

[49] Doc. nos. [11](), [13]().

[50] Doc. no. [17]().

[51] Doc. no. [18-1]() at 3-4.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  February 1, 2018

cc:  Peter G. McGrath, Esq.
     Lisa Snow Wade, Esq.
     Scott H. Harris, Esq.
     Ashley B. Scott, Esq.
     Dianne E. Ricardo, Esq.
     John J. O'Connor, Esq.
     Robert A. McCall, Esq.